603 So.2d 1312 (1992)
James Robert FOSTER, Appellant,
v.
STATE of Florida, Appellee.
No. 91-01794.
District Court of Appeal of Florida, First District.
August 7, 1992.
Rehearing Denied September 2, 1992.
*1313 Nancy A. Daniels, Public Defender, and Glen P. Gifford, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Sara D. Baggett, Asst. Atty. Gen., Tallahassee, for appellee.
WEBSTER, Judge.
In this direct criminal appeal, appellant seeks review of a judgment convicting him of three counts of DUI manslaughter. In support of his contention that the convictions should be reversed, he argues: (1) that the trial court erroneously precluded certain eyewitnesses called by the defense from giving their opinions as to the cause of the collision which resulted in the charges; (2) that the trial court erroneously precluded an accident reconstructionist called by the defense from testifying that, in his opinion, none of the physical evidence indicated that alcohol had been a factor contributing to the collision which resulted in the charges; and (3) that the trial court erroneously twice gave to the jury a nonstandard instruction regarding causation. We conclude that only the third ground merits discussion, and that none of the grounds warrant reversal. Accordingly, we affirm.
The charges against appellant arose out of a collision which occurred on a 4-lane federal highway, when appellant's auto crossed the median and struck, more-or-less head-on, an auto containing four passengers, resulting in the deaths of three of the passengers. A blood test performed on appellant after the collision established that appellant had a blood alcohol level of 0.17.
The defense theory of the case was that, although appellant had consumed some alcoholic beverages prior to the collision, appellant was in full control of his faculties and was neither intoxicated nor impaired at the time of the collision. Appellant's prior consumption of alcoholic beverages had not been a cause of the collision; rather, it had been caused by another vehicle, which had cut appellant off, requiring appellant to brake and swerve and to lose control of his auto.
At the commencement of the trial, the judge announced to counsel that she intended to give to the jury the standard preliminary instruction. Fla.Std.Jury Instr. (Crim.) 1.01. She also announced that she intended to "bifurcate" the charge, giving the general instructions both before opening statements and after closing arguments, as recommended by the Supreme Court Committee on Standard Jury Instructions in Criminal Cases and approved by the supreme court. In the Matter of Use by Trial Courts of Standard Jury Instructions in Criminal Cases, 431 So.2d 594, 596 (Fla. 1981). Finally, the trial judge announced that she also *1314 intended to give, in addition to the standard instruction on DUI manslaughter, a portion of a jury instruction given in another DUI manslaughter case, Naumowicz v. State, 562 So.2d 710 (Fla. 1st DCA 1990), review denied, 576 So.2d 289 (Fla. 1991). Counsel for appellant objected to the portion of the instruction from Naumowicz which the trial judge proposed to give, saying that it "would change the standard DUI manslaughter instruction that the Court is also giving ... as it relates to causation, and we believe that it puts an additional burden upon the defendant in this case... ." The objection was overruled.
After the jury had been sworn, the trial judge gave it certain preliminary and general instructions, including the following:
Robert James Foster, the defendant in this case, has been accused of the crime of three counts of DUI manslaughter. Before you can find the defendant guilty of DUI manslaughter, the State must prove the following three elements beyond a reasonable doubt:
One, Robert James Foster operated a vehicle.
Two, Robert James Foster, by reason of such operation, caused the death of Norman T. Smith, Lisa G. Smith and Andrea J. McGee.
Three, at the time of such operation Robert James Foster was under the influence of alcoholic beverages to the extent that his normal faculties were impaired or had a blood alcohol level of 0.10 percent or higher.
"Vehicle" is any device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon stationary rails or tracks.
"Normal faculties" means those faculties of a person such as the ability to see, hear, walk, talk, make judgments and, in general, to normally perform the many mental and physical acts of our daily lives.
"Alcoholic beverages" are considered to be beer, wine, whiskey, and all other alcoholic beverages of any kind and description which are made for human consumption.
Before you can find the defendant guilty of DUI manslaughter, the State must prove beyond a reasonable doubt, among other things, that the defendant's deviation or lack of care in the operation of his automobile attributed to the fatal accident in which these three named individuals were killed.
(This instruction, except for the emphasized portion, was the standard DUI manslaughter instruction then in use. The emphasized portion was taken by the trial judge from the instruction used in Naumowicz.[1]) At the conclusion of the trial, the judge gave a substantively identical instruction, over renewed objection by appellant's counsel that the portion of the instruction taken from Naumowicz modified the standard DUI manslaughter instruction as it related to causation and, in addition, tended "to shift the burden to the defendant and violates ... his due process rights."
Appellant was charged with violations of Section 316.193(3)(c)3., Florida Statutes (1989). That version of the DUI manslaughter statute was first enacted effective October 1, 1986. Ch. 86-296, §§ 1, 29, Laws of Fla. The supreme court had repeatedly held that prior versions of the statute had been intended by the legislature to create a strict liability crime  i.e., that it was unnecessary to prove that negligent operation of a vehicle by the defendant was a cause of the victim's death. *1315 The only essential elements were (1) that a death had occurred; (2) that the death had resulted from the operation of a vehicle by the defendant; and (3) that the defendant had been intoxicated while operating the vehicle. See, e.g., Armenia v. State, 497 So.2d 638 (Fla. 1986); Baker v. State, 377 So.2d 17 (Fla. 1979); Roddenberry v. State, 152 Fla. 197, 11 So.2d 582 (1942).
However, in Magaw v. State, 537 So.2d 564 (Fla. 1989), the court concluded that the intent behind the 1986 amendment contained in Chapter 86-296 had been to introduce causation as an element of the offense of DUI manslaughter. Having so concluded, it then added the following caveat:
We caution, however, that the statute does not say that the operator of the vehicle must be the sole cause of the fatal accident. Moreover, the state is not required to prove that the operator's drinking caused the accident. The statute requires only that the operation of the vehicle should have caused the accident. Therefore, any deviation or lack of care on the part of a driver under the influence to which the fatal accident can be attributed will suffice.
Id. at 567. Subsequent decisions have interpreted Magaw to mean that, to establish a violation of the DUI manslaughter statute, the state must prove that, while operating a vehicle, the defendant was under the influence of alcoholic beverages (or drugs) to the extent that his or her normal faculties were impaired, or had a blood alcohol level of 0.10 percent or higher; and that simple negligence on the part of the defendant while operating the vehicle was a cause of the victim's death. See Parker v. State, 590 So.2d 1027 (Fla. 1st DCA 1991); Murphy v. State, 578 So.2d 410 (Fla. 4th DCA 1991); Kurtz v. State, 564 So.2d 519 (Fla. 2d DCA 1990). See also United States v. Sasnett, 925 F.2d 392 (11th Cir.1991) (applying Florida law, pursuant to the Assimilative Crimes Act, 18 U.S.C. §§ 7, 13). Thus, the elements of the offense of DUI manslaughter pursuant to Section 316.193(3)(c)3., Florida Statutes (1989), would appear to be (1) that the defendant negligently operated a vehicle; (2) that the defendant's negligence was a cause of the death of another; and (3) that, while operating the vehicle, the defendant was under the influence of alcoholic beverages (or drugs) to the extent that his or her normal faculties were impaired, or had a blood alcohol level of 0.10 percent or higher.
In criminal cases, the trial judge bears the responsibility of ensuring that the jury is fully and correctly instructed as to the applicable law. See, e.g., In the Matter of Use by Trial Courts of Standard Jury Instructions in Criminal Cases, 431 So.2d 594 (Fla. 1981); Rosales v. State, 547 So.2d 221 (Fla. 3d DCA 1989). "While the standard jury instructions are intended to assist the trial court in its responsibility to charge the jury on the applicable law, the instructions are intended only as a guide, and can in no wise relieve the trial court of its responsibility to charge the jury correctly in each case." Steele v. State, 561 So.2d 638, 645 (Fla. 1st DCA 1990). The standard instructions should be amplified or modified to the extent required by the facts of a particular case. Cruse v. State, 588 So.2d 983 (Fla. 1991); Yohn v. State, 476 So.2d 123 (Fla. 1985). In this case, we presume that the trial judge's decision to add to the standard instruction for DUI manslaughter the portion of the instruction taken from Naumowicz was motivated by her recognition of her responsibility to ensure that the jury was fully and correctly instructed regarding the elements of the offense.
At the time of trial, the "Elements" portion of the standard charge for DUI manslaughter read as follows:
Before you can find the defendant guilty of DUI Manslaughter, the State must prove the following three elements beyond a reasonable doubt:
1. (Defendant) operated a vehicle.
2. (Defendant), by reason of such operation, caused the death of (victim).
3. At the time of such operation (defendant)
a. [was under the influence of [alcoholic beverages] [a chemical substance] [a controlled substance] to the extent that his normal faculties were impaired.]

*1316 b. [had a blood alcohol level of 0.10 percent or higher.]
(The charge included the note to "[g]ive 3a and/or 3b as applicable.") This portion of the standard charge had been approved for publication in 1987, nearly two years before the supreme court decided Magaw. The Florida Bar re Standard Jury Instructions  Criminal, 508 So.2d 1221, 1228 (Fla. 1987). Its substance was not subsequently amended until very recently, when the supreme court approved for publication the following revision of element 2:
2. (Defendant), by reason of such operation, caused or contributed to the cause of the death of (victim).[[2]]
In our opinion, the "Elements" portion of the standard charge was at least potentially misleading, because it failed clearly to communicate the element of causation which the supreme court concluded, in Magaw, had been added as a result of the 1986 amendment; i.e., it failed clearly to inform the jury that the offense involved something more than that the victim's death have occurred as a result of the defendant's operation of a vehicle while under the influence of alcohol (or drugs)  it required, in addition, that the defendant have been at least negligent in the operation of the vehicle, and that such negligence have been a cause of the victim's death. In addition, the standard charge did not make it clear that the defendant's negligence need not have been the sole cause of the victim's death; it need only have been a cause. (The latter inadequacy was the subject of the recent revision of element 2. However, in our opinion, the present charge continues to suffer from the former shortcoming.) Apparently, the trial judge shared this view and, as a result, added to the standard charge the portion of the charge taken from Naumowicz.
While the language of the charge given by the trial judge could conceivably be improved upon, we believe that it was sufficient to inform the jury what it must find before it could conclude that appellant was guilty of DUI manslaughter.[3] The charge neither shifted any "burden" to appellant nor deprived him of his right to due process of law. It was not error to give the charge. Accordingly, we affirm appellant's convictions.
AFFIRMED.
BOOTH and WIGGINTON, JJ., concur.
NOTES
[1] Naumowicz v. State, 562 So.2d 710 (Fla. 1st DCA 1990), review denied, 576 So.2d 289 (Fla. 1991). Although the charge is set out at page 712 of that opinion, the opinion does not indicate whether it had been objected to at trial or made an issue on appeal; nor does the opinion either approve or disapprove of the charge. We have examined the court file in Naumowicz and have determined that the charge had been objected to at trial; and that its propriety was raised as an issue on appeal. Because this court affirmed Naumowicz's conviction of DUI manslaughter without specifically addressing the propriety of the charge, the most that can be said is that this court concluded that the charge had not constituted reversible error. See Arnold Lumber Co. v. Harris, 503 So.2d 925 (Fla. 1st DCA 1987), for the proposition that a court may take judicial notice of its own files.
[2] Standard Jury Instructions  Criminal Cases No. 92-1, 603 So.2d 1175 (Fla. 1992). The Committee's note explains that "[t]he words `or contributed to the cause of' were added to paragraph 2 after discussing Magaw v. State, 537 So.2d 564 (Fla. 1989)."
[3] The words "deviation or lack of care" and "attributed" come from the Magaw opinion. 537 So.2d at 567. An alternative to the present standard instruction might read as follows:

Before you can find the defendant guilty of DUI Manslaughter, the State must prove the following three elements beyond a reasonable doubt:
1. (Defendant) negligently operated a vehicle.
2. Such negligent operation was a cause contributing to the death of (victim).
3. While operating the vehicle, (defendant)
a. [was under the influence of [alcoholic beverages] [a chemical substance] [a controlled substance] to the extent that [his] [her] normal faculties were impaired.]
b. [had a blood alcohol level of 0.10 percent or higher.]
"Negligence" is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like circumstances or in failing to do something that a reasonably careful person would do under like circumstances.
"Vehicle" is any device, in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon stationary rails or tracks.
"Normal faculties" mean those faculties of a person, such as the ability to see, hear, walk, talk, make judgments, and, in general, to normally perform the many mental and physical acts of our daily lives.
The definition of "negligence" comes from the current civil standard jury instruction defining that word. Fla.Std.Jury Instr. (Civ.) 4.1. We urge the Supreme Court Committee on Standard Jury Instructions in Criminal Cases to consider the need for further revision of the current standard charge for DUI manslaughter.